It is an appeal from the Court of Veterans Claims. And we're going to begin with Mr. Stolls. Are you ready? I am, Your Honor. Thank you. You may proceed. Good morning, and may it please the Court. The Board knew about the NAS report. The Veterans Court erred... This is Judge Toronto. I want to stop you right there. How do we know that? I look at... The Board... And you've said this repeatedly, and I still can't get it, so I really would like to understand this. When I look at the Board's opinion, there's a reference to regulations, to the authority to have regulations coming out of NAS reports, but I don't see any reference to the 2014 report, even if I look back at the regulations at the Federal Register entries from 2017 and 2016, where the regulations were enacted. There's no specific reference, as far as I can tell, from searching to the 2014 update. I'm not sure that it's an important part of your argument, but you make it rather central, including in your opening sentence today. Two places for sure, Your Honor, that are very obvious. One, Appendix 66, the Board references the NAS report, and also it was conceded an oral argument before the CABC. Can you show me where the Board references the 2014 update? It does not specifically say the 2014 update, Your Honor, but it does discuss the National Academy of Sciences and Scientific Information and references 1116. It's just in a boilerplate, right? It's not actually discussing it. It's not even citing it, is it? We cite this, Your Honors, for the proposition and for the point that the Board had knowledge that this existed, and again, it was conceded at oral argument at the CABC. It was conceded. There was never a question in this case that the Board, and more importantly, truly, is that the agency, including the Board of Veterans' Appeals, has direct knowledge of this report. I thought that the concession was that the agency does, which doesn't necessarily mean the Board does. Well, if the agency does, I would submit, Your Honor, that the Board does. Well, does the Joint Appendix contain the transcript of this concession you're referring to? Yes, Your Honor. I believe so, Your Honor. I'm sorry to make a big deal out of it, but you rather centrally feature this idea of what the Board knew as a potential limiting principle for your argument, and I keep looking for where this point is established. Well, I do want to stress to Your Honor that really the linchpin of the argument is that the agency knows about this, because putting aside Mr. Eusebio's specific case, the agency has knowledge of this NAS report. But now you really do start to face the kind of where does this end concerns that lurk about this case. It really is one thing to say the Board, the particular Board judges who were writing this, actually knew about it and didn't attend to it, and another thing to say that somewhere in this mammoth agency is this report along with lots of other things. This is, and the dissent, frankly, hits this head on. This is not something that's buried somewhere in a library far, far away. The NAS report, when you Google NAS and VA, you get a hit for this. The Board has, in my experience as a veteran's advocate and cited, more importantly cited in our opening brief and reply briefs, has used this before. It was commanded, the agency was commanded by Congress to rely on this and to have it created by the National Academy of Sciences. This is something that the agency knows well about. It was in its purple book, which has been cited. The Board knew about it in the manual that it uses. This is far from some obscure, as Sellers said, the unguided safari. This is far from something that is just so far outside of the realm of the department's knowledge. It's something that is utilized truly every day in Agent Orange cases. Yeah. To help you out a little bit, didn't Judge Allen specifically cite something where he said the secretary conceded at oral argument before the court that the Board was actually aware of it? Not just the agency. Yes, Your Honor. Yes, Your Honor. He did. And just to double check, do we have that transcript or no? Yes, Your Honor. I apologize. I'm looking for it in Judge Allen's dissent. He cites to the transcript, page eight, footnote three. Yes. Is that in the appendix? It's a citation to the YouTube video link. Yes, it's in the... Okay. I think I understand the lay of the land, whatever the answer actually is. Okay.  Okay. The Lange case that recently came out indicates that the court should or really supports the proposition that we are making in our pleadings that the Veterans Court should have asked if VA had knowledge of the NAS report. It did. Whether the Board or VA writ large does, it did. It had actual knowledge. And then did that report contain relevant information supporting an indication that Mr. A direct relationship is not required. And that's the Veterans Court's legal error here. By requiring evidence specific to Mr. Eusebio, the Veterans Court required a stronger connection to place evidence before the Board than the law requires to trigger a medical opinion. Can you start kind of at the foundation, which is why is any constructive possession doctrine permissible under the statute? Because under the statute, under the Board statute or under the court statute to... Well, I guess there are sort of two, at least a number of statutory provisions. The one the government starts with is 7252 and 7261, which is the Veterans Court review statute about limiting its decision to the record for the Secretary and the Board. I think that's probably the primary argument that the government makes. And the record is the actual record. The argument goes not things that were not put before the Board. Right. And that, Your Honor, is... I read the Secretary's argument there to say essentially what they've been arguing for many years, which is that the record is only what is obtained in the claims file. And Bell dispensed with that at the very early stages of judicial review. And then many cases came down interpreting the statute. And so it is... I'm sorry, just Bell is a Veterans Court case, not a case from us, right? It is, Your Honor. In the Lange case, this court did rely on Bell. And so I would also rely on Lange. I would also rely, as we did in our pleadings on the Goals case, for what is relevant. And so relevant evidence does come in. And it's not related just... It doesn't have to just be in the four corners of the claims file, as the Secretary asserts. And that is supported by 7252. Again, this court really required a direct relationship, which is a pre-adjudication kind of standard. He's not... Mr. Eusebio, importantly, was not trying to establish his entitlement to benefits before the CAVC. He's seeking an examination. It's a threshold matter. And asking that his ability to get that exam based on all the evidence the board knew about and VA knows about. To paraphrase this court in McGee, the NAS report is not applicable to Mr. Eusebio's case because it is dispositive. It is applicable because it is relevant. Mr. Eusebio's failure to... Are you saying that the medical examination and his desire for medical examination is part of what the agency was required to do under the duty to assist? Yes, Your Honor. Okay. Go ahead. I cut you off. You can finish what you were saying. No, and I do have a... No, I can reserve the rest of my time for rebuttal. Thank you, Your Honors. Okay. Okay, let's hear from Mr. Hockey. May it please the court. Before I begin my presentation, I just want to address the points that Mr. Stolz just made in order. Number one, his point about whether or not this particular report was before this board. The answer to that is no, and it's clear on Appendix 8 where the court identifies that, quote, the appellant does not assert nor does the record reflect that he submitted the 2014 update to the board or requested that the board consider it in relation to his claim. The passage that we discussed with respect to the dissent refers to the board writ large and that goes to... I can't remember if it was Judge Wallach or Judge Trano's point that here the VA conceded that the board, writ large, in other words, there were folks in the board that had maybe had some exposure to this report, but there was no evidence on this record that the particular board judge here did. And in fact, had that been the case, I would have thought that they would have remanded under the first prong of the Bell Rule, which is premised on whether or not an actual submission was made, because if indeed the board had possession of it or had then provided the report under Bell I, its failure to be included in the record on appeal would have been resolved by a remand back to the board for clarification. So that's the answer to number one. This is Judge Wallach. Yes, Judge Wallach. Wouldn't any competent board member be aware of it? I would... I mean, I obviously can't respond to that. It's a 2014 report. It is currently being reviewed by folks within VA who are charged with looking at that kind of information to determine whether changes need to be made to the presumptive regulations for exposure to Agent Orange. Those are not the board judges. So generally, it's outside their bailiwick. So the only way any board judge, I think, would necessarily become aware of it is if somebody raised it to them. But wait, wait. This board, their whole job is analysis of veterans' claims. And this report has not only been with the agency, but it has been the subject of much litigation, as has all of the Agent Orange issues. I mean, how could it be that someone whose job is to analyze veterans' claims wouldn't know? Your Honor, again, this is a report from 2014. The board has this case, I believe, in 2017. The report is not... Mr. Hafford, just to be clear, I thought the 2014 report didn't come out until 2016. Oh, I'm sorry. You're right. It may have come out in 2016. But the point, Judge O'Malley, is that report is not designed to inform board judges. It's designed to inform agency regulation people. The other side of the, if you will, rulemaking or, you know, it's the distinction between rulemaking people who do not... They're not board judges and the board side of the House who are adjudicators of individual claims. So there's no requirement, there's frankly no system really in place outside the Purple Book. Now, the Purple Book is a method by which folks in the board are advised of things. But in this case, the Purple Book that's been submitted to the court came out after the board decision. So, I mean, that's what the Veterans Court noted too. You can't look at a Purple Book entry that postdates the board decision to say that the So... But the rule that you're proposing is not simply one that says, well, maybe if this comprehensive report didn't get there in time for this particular board to analyze it, that we shouldn't find that it was in their possession. The rule that you're proposing is that these kinds of things would never be in the board's constructive possession. So that even if the agency and the board had reviewed these things multiple times in the past, that you can't say that this particular board had constructive possession of it, right? Well, there's a couple of ways I need to answer that, Your Honor, frankly. Yeah, that would have been an argument we would make and did make in our red brief and that we do believe is with respect to these non-claim documents. Remember, the Bell and his progeny really relate to claim documents, not sort of medical treaties or analyses of other things. And over the years, the Veterans Court has dealt with attempts to impose knowledge or possess constructive receipt, if you will, of these sort of non-claim specific documents on the VA. But the way they've handled that is through application of the standard that was articulated by Bell and over the years applied by the Veterans Court and most recently by this court in Lange. So that's the sort of history of what we're dealing with here. And... So are you saying that you could never have a, when you call them non-claim documents, I assume you mean that don't relate to either medical history or his precise service, that you could never have a non-claim document that would be relevant? That would be that wasn't submitted or was the board or RO was made aware of. And the basis of that is 5103 capital A, the duty to assist provision. Now you're saying the RO wasn't made aware of it. So you're telling me that ROs don't know about this report? Well, yeah, I would think that I would speculate that ROs probably don't know. In fact, I would speculate that of the two types of reviews, the board might be more likely to know. But the point is in 5103A, if you look through the various subsections that and remember 5103A came after Bell, they set forth the requirements that the VA has for obtaining documents. And those requirements are conditioned on being made aware of the documents. And that's what Congress says, plainly in those statutes that the VA will gather relevant documents that they're made aware of. And that even extends, frankly, to the claim documents, you know, that... Doesn't 5103A say that the examples aren't limiting there? I'm referring simply to the plain language of the instruction Congress imposed on the VA, which says, we will... VA go out and get documents that the claimant makes you aware of. Now, I'm not... Actually, I have more to say to finish this question. Because the... How it fits in with your question is, well, are there any exceptions that VA itself recognizes as opposed to the Veterans Court? And the one exception is you... The court noted in the Lane opinion is the 1995 General Counsel opinion. For purposes of Q, VA recognized the... Basically, the underpinnings of Bell and said, we will, for purposes of Q's concern about what the extent... The facts were extent at the time, as the court may recall that Russell language that was adopted in the legislative history of the Q statutes, in which we, in this court, I think it's several times, and including in the Cook case, articulated as being the standard for Q. And so, and also in the Pierce case, you look to the record at the time, and that's what the General Counsel opinion in 1995 was geared toward, was, well, what happens if you come in an acute claim and you identify a document clearly should have been in a record? It was a medical document, created it around the time, and for whatever reason, it either wasn't in the claims file, but should have been, or it was in the claims file, and the adjudicator just missed it. And that's what the General Counsel opinion identifies as, well, for those documents, we're going to consider them to be a part of the claims file. So, therefore, at least providing folks with an argument of Q, not necessarily, you just have to meet the other hurdles of Q, but an argument of Q. So, that's the sort of scope that the VA has allowed for itself with respect to these documents that weren't in the claims file. The VA has never understood... I'm sorry, was there a question? Yes. Well, I actually have several questions, Mr. Hockey, since you paused for breath. Oh, mistake. That was my bad, I guess. Yes, indeed. First one is a little housekeeping question. In your red brief on page 21, what does footnote 9 say? Okay. Oh, yeah, that's... Was that a concession in that footnote? You know that recent Casper the Friendly Ghost commercial that GEICO is using? Good answer. That's all I have. Okay. Are you familiar with Lang v. Wilkie? So, I'm definitely familiar with Lang v. Wilkie, and I'm prepared to talk about it at length. Good. How does your argument square with the Veterans Court's authority to take judicial notice of adjudicative and legislative facts? What happens if there are intervening facts? Does the court have to rest on a legal fiction and ignore those things? Oh, no, well... Those are my Lang questions. So, I don't see Lang... Well, I guess I'm not fully prepared to discuss Lang, I guess, to the extent that I thought Lang focused on the constructive receipt doctrine itself and didn't deal with what I think I understand your question, Judge Wallach, to be more of a judicial notice thing, which in our brief, our position is that adjudicative facts are not the kinds of things that judges take judicial notice of. Rather, it is the more broader facts of which these facts are not included. They might be someday if there was a regulation issued pursuant to the report, but at this stage, there isn't. Although, one could take advantage and look at the regulation and find that it's not, the disability here is not included, and frankly, it isn't. That's why we're talking about direct service connection. My discussion of Lang was going to be a little different and focus on this, where I started just now with my answers to Judge O'Malley's questions with Bell and his progeny. Keep going. So, I know it's a long week and we're the last ones, but the more I read Lang, I frankly think the more Lang addresses pretty much this case. We clearly are not pleased with the fact that Bell exists, although we have accepted a portion of it as I just articulated. The portion we don't like about Bell, obviously, as the way the Veterans Court on occasion has used the Bell standard, and let me be clear, that standard really has never changed. More recently, some panels from the Veterans Court have described it as Mr. Stoltz mentioned, the direct evidence or direct connection standard, but that's a label. The standard has always been, as Judge O'Malley articulates in the Lang decision, I'm sorry, the court articulates in the Lang decision, whether there's a reasonable expectation that something would have been part of the Veterans Claim. That's the language from Bell and it's been adopted by all the courts that have applied Bell over the years. And when it comes to some of these documents that are not actual claims documents, the standard has still been applied and with a sort of conclusory language about, well, this document or that document is too tenuous because it doesn't necessarily reflect anything particular about the claimant or his claim. So those are the sort of, those are all relevancy terms, is my point here. And so, beginning from the 1992 Bell- But are we supposed to, at what point is that relevancy supposed to be assessed? I mean, at this point, there's, if we're just looking at this document, there's clear discussion of thyroid homeostasis and Agent Orange. Now, to what extent that would apply to these particular nodules, I don't think is something we should be assessing. We should simply be saying, could this assist in convincing the board that he was entitled to at least a medical exam? So, well, the last part of it, I'll have to answer separately. But the first part of it, Your Honor, is exactly the question that the Veterans Court posed to itself. And in fact, they are the body that should be doing that, as this court suggests in footnote four in Lange. They looked at this document and concluded that it did not come that close enough such that there was an error. They should consider that the board erred in not considering it when it was never brought to the board's attention. That was the exact analysis that the Veterans Court performed in this case, as it did in Munzingo, as it did in Bowie, as it did in Goodwin. Our position would be this court is not in a position to step into the shoes of the Veterans Court and determine whether this particular document satisfied that standard. Our position would be, you know, assuming that Bell applies altogether, and I'll get to that point in a minute. Our position would be this court would simply determine whether the standard used, in other words, whether it could be reasonably expected to be connected to the Veterans Claim, which was the standard used here, was the appropriate standard. And of course, the problem I think Mr. Zubio has before this court today is, in August, this court said that very thing in Lange. That's the standard that this court said should be applied. And looking at the decision at issue here, that is exactly the standard that was applied in this case. So would you suggest that a decision should say Munzingo doesn't really create a direct relationship claim? It's simply just phrasing reasonableness in a probably too narrow way? Well, Munzingo... Go ahead, you can finish. Munzingo didn't articulate...used the word direct. In fact, I think Munzingo may have quoted one of the earlier cases, whether it was Bowie or Goodwin, just where there was a direct relationship. And yes, that's a useful tool, a useful way to describe the analysis. In other words, what they were addressing in Munzingo and what they addressed in Bowie were these documents that had nothing to do with the particular claimant. But in Bowie, that's the problem. Bowie was a document that applied to a different claimant as opposed to a document that essentially addresses everyone who was in Vietnam or exposed to Agent Orange or waters that were contaminated with Agent Orange, right? Isn't that different than Bowie? Well, I apologize. Goodwin was the one with the different claimant, but Bowie had to do with the NIOSH report. But both of them proceed along the same line as Bell, Munzingo. The part of Turner that this court left in place in Lange and in this case, and that is this question of whether or not there was too tenuous a relationship between what was in the document and what was before the board presented by the claimant. And in all of those cases, and that's where the too tenuous language comes up in Bowie, and it's basically been used ever since by all of these folks, simply to describe that they've looked at the evidence, they've determined that the evidence is too tenuous to say that the board erred in not considering it when it wasn't presented to the board, as frankly, 5103 A would normally require to trigger any kind of failure on the part of the board under that statute. So that's that whole thing. To deal with the medical evidence thing, the medical evidence argument here is really a cart horse argument, because the part of 5103 A that imposes a requirement on VA to consider ordering, remember, 5103 A only requires the VA to consider. There's no right to a medical exam under 5103 A. That was a huge point of contention in the buildup to that statute, and Congress resolved it by basically saying, VA, you must consider it in certain circumstances. But the plain language of 5103 A.D. says that that consideration is premised on the record. And what we're discussing here today is not the determination to order a medical opinion. What we're discussing is what should be in the record. And the argument that we should focus on, well, it could be a medical exam, is simply an attempt to take what Mr. Uzubio believes is a lesser standard with related to medical exams, and move it up into the question that we're really facing here, which is, what's the requirement for including documents? And that's a relevancy requirement. Plainly incorporated. Mr. Hockey, this is Judge Toronto. If you're asking the question whether a particular document that's not in the record here, the claim before the agency, might not the answer actually depend on whether you're talking about tenuous in relation to the merits of the claim, or tenuous in relation to the 5103 A.D. right to secure a government-furnished medical exam? Why would you exclude the latter? Well, first of all, there is no right, as I said, under 5103 A.D. You have a right to have that considered. But the plain language of that- Right, but since consideration can be-since the agency or the board can abuse its discretion in how it undertakes that or concludes that consideration, there is a right in there that can sometimes be reversed-enforced by reversal by the Veterans Court. Yes, but the language that Congress imposes on the Secretary is that that decision that you're discussing, whether or not there should be a medical exam order, is premised on the record. Right? So that comes- Right, but I thought we were already beyond this record point once one accepts this whole line of cases up through our case in Lange. Well, no, I don't think so. I think the whole-I mean, I thought the point of our discussion here was, what is the right standard? That's the argument raised in the blue brief. They tried to argue-I mean, I guess they concede that there's a relevancy standard, but they don't really articulate what it is. Our position is, I think that the standard is articulated by the Veterans Court in the six or so series of cases that this court went through in Lange, and including in Lange, the reasonably related standard is the appropriate standard. The fact that-and my focus more recently in our discussion here on too tenuous is sort of the conclusion that, you know- Right, but then I guess I just phrased the point differently. Reasonably related to what? Why isn't something reasonably related to the claim if it is reasonably related to the considerations that might lead the board in exercising its 5103A authority to order a medical exam, which might then, in turn, result in a beneficial result for the claim? Well, I appreciate that. I'm going to stick to my gun here and say I think we need to proceed logically through this process, and one of the reasons I say that is because, Judge Schreiner, if you accept your reading, then you've just read basically the relevancy part of the-that's the only thing that's imposed on VA under 5103A out of the regulation-or out of the statute. Because you've now said- The record part or the relevancy part? The relevancy, because why wouldn't every veteran who's trying to seek a finding of medical opinion? That would be- Well, it depends on what it is. I mean, if you've got a knee claim, then this report is not going to be relevant. Well, yeah, but you wouldn't be asking for-you would be asking for some sort of, like, treaties report on knee claims or treaties-I mean, I understand that distinction, but the point is, here, what we're talking about-we're not limiting-I don't believe, at least it's not my intention to limit our discussion here to this particular report on Agent Orange. I'm talking generally. If this court issues a remand order in this case, then it would be-it would seem to be applicable to any sort of treaties-type evidence, which is the one thing that the Bell and its progeny, the Veterans Court, has constantly been trying to address. If you go back and look at all those decisions, there's discussions in many of those cases, including Manzingo and including Bowie, about the concern of the administrative burden one would be placing on the board to find that a basis of error could be premised on the board not being aware of some treaties or similar-type discussion that was never raised or presented to the board. We've been working really hard. We're, this morning, starting to feel like the never-ending election cycle, but I think we're going to have to quit and let Mr. Stolz do the rebuttal. But I think your point's well made. We've got that in your briefing. Thank you. Thank you. Mr. Stolz, we went way over with Mr. Hockey, and so I will give you up to an extra three minutes, but don't feel the need to use it if you don't want to. I'll try not to, Your Honor. I just want to start by saying I am heartened by Mr. Hockey's presentation because the CMS is not as far as the initial secretary's brief had me believing coming into this oral argument. It does appear that we agree that this direct relationship test is no good that the CAVC used, and so I would just say that if the NAS report, which was before the Department of Veterans Affairs, if it contains relevant information supporting an indication that Mr. Eusebio's thyroid condition is related to Agent Orange exposure and service, then this case needs to be remanded back to the CAVC. Thank you, Your Honors. Thank you. All right, the case will be taken under advisement. This court is adjourned. The Honorable Court is adjourned from day to day.